# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN B.[1]**, | Case No. 3:20-cv-1173-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

George J. Wall, 825 NE 20th Ave., Suite 330, Portland, OR 97232. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Katherine B. Watson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff John B. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under Title II of the Social Security Act (Act). For the reasons below, the Court AFFRIMS the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

On May 31, 2017, Plaintiff applied for DIB alleging that his disability began on

September 30, 2009. AR 14. Plaintiff's date last insured for DIB coverage is December 31, 2014.

Plaintiff was born on June 25, 1957 and was 57 years old on the date last insured. AR 204. The

Commissioner denied Plaintiff's claims on September 25, 2017. AR 92. The Commissioner

denied Plaintiff's application on reconsideration on February 9, 2018. AR 113-15. Plaintiff

requested a hearing before an Administrative Law Judge (ALJ), which was held on

April 29, 2019. AR 56. Before that hearing, Plaintiff amended his alleged onset date to

December 1, 2014. AR 313. Plaintiff testified at a supplemental hearing before the ALJ on

August 14, 2019. AR 31. The ALJ concluded that Plaintiff was not disabled on or before his date

last insured, and the ALJ issued a written decision denying Plaintiff's application. AR 14-24.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council

denied Plaintiff's request for review on appeal. AR 1-3.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" (RFC). This is an assessment of
        work-related activities that the claimant may still perform on a regular and
        continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Act through December 31, 2014. AR 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 1, 2014. *Id.* At step two, the ALJ determined that Plaintiff suffered from the severe impairment of seizure disorder. AR 16-18. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18-19. The ALJ then determined Plaintiff's RFC and found that Plaintiff could perform "medium work as defined in 20 CFR 404.1567(c) except the claimant could never climb ropes, ladders, or scaffolds, and should have avoided all exposure to hazards." AR 19. At step four, the ALJ found that Plaintiff could not perform his past relevant work as a construction worker. AR 23. The ALJ found at step five, however, that Plaintiff could perform other jobs

existing in the national economy, including hand packager, stores labor, and machine packager. AR 24. The ALJ thus found that Plaintiff was not disabled under the Act. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ made three errors. First, Plaintiff argues that the ALJ improperly discounted the testimony and medical opinion of Plaintiff's treating physician, Dr. William Brewster Smith. Second, Plaintiff argues that the ALJ failed to fully adopt the opinions of the two state medical consultants, Dr. Susan H. Johnson and Dr. Audrey H. Davey. Third, Plaintiff argues that the ALJ erred by concluding Plaintiff's seizure disorder did not meet a listed impairment. The Court addresses each alleged error in turn.

**A.  Dr. Smith's Testimony**

Plaintiff argues that the ALJ improperly discounted the testimony and medical opinion of his treating physician, Dr. Smith. Because Plaintiff filed his application for benefits after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how the ALJ evaluates medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ primarily considers the "supportability and "consistency" of the opinions. *Id.* §§ 404.1520c(b)-(c), 416.920c(b)-(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence and the source's explanation for the opinion. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion

is with evidence from other medical and nonmedical sources. *Id.*
§§ 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered the secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The secondary factors are the relationship with the claimant, specialization, and "other factors." *Id.* §§ 404.1520c(c), 416.920c(c). The Court must also continue to consider whether substantial evidence supports the ALJ's analysis. 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

Dr. Smith is a neurologist with a specialty in epilepsy at Oregon Health Sciences University. AR 63. Plaintiff remained under Dr. Smith's medical care from 1992 or 1993 until 2014 when Dr. Smith downscaled his practice. AR 63-79. Plaintiff underwent brain surgery in 1992 or 1993 for his seizure disorder. AR 65. Dr. Smith treated Plaintiff before and after his surgery. *See, e.g.*, *id.*

Dr. Smith wrote a letter in 2019 and offered testimony at the April 29, 2019 hearing regarding the frequency of Plaintiff's seizures and Plaintiff's associated cognitive impairments. AR 63-79, 792-93. Dr. Smith stated that the cognitive impairment documented in Dr. Haley Trontel's 2017 neurological evaluation of Plaintiff "in all probability" also existed in 2014, before the date last insured. AR 68. Dr. Trontel's 2017 report concluded that Plaintiff demonstrated a "significant impairment in several cognitive domains." AR 604. Dr. Smith stated that he recalled that before Plaintiff's surgery, he underwent similar neuropsychological testing

from Dr. Robert Stanulis, and that the results were similar to the results from Dr. Trontel's testing, showing significant cognitive deficits. AR 69. Dr. Smith was part of Plaintiff's pre-surgical evaluation team. AR 64. Dr. Smith, however, did not discuss Plaintiff's cognitive status post-surgery. Dr. Smith described Plaintiff's surgery as having a "good, but not perfect" result. AR 65. Dr. Smith also generally described a person with Plaintiff's condition as having an impairment as described by Dr. Trontel for a long time, that "has probably been slowly getting worse over the years." AR 69. Dr. Smith also opined that although his chart notes from 2013 and 2014 document that Plaintiff only had two to four seizures per month, he believed Plaintiff had underreported those numbers because as epilepsy progresses, individuals often lose the ability to recognize when they have had a seizure. AR 67, 74.

The ALJ acknowledged Dr. Smith's extensive relationship with Plaintiff, but discounted Dr. Smith's opinion due to its lack of consistency and supportability. AR 17-21. First, the ALJ explained that Dr. Smith's testimony conflicted with contemporaneous treatment records. AR 18. Substantial evidence supports this finding. Dr. Smith's testimony about Plaintiff's cognitive state in 2014 conflicts with his own treatment records from that time. Dr. Smith's chart notes dated July 25, 2013, conclude that Plaintiff's neurological exam was "unremarkable" and that Plaintiff was "alert and oriented with normal speech." AR 461. Dr. Smith reached the same conclusion six months later in January 2014, noting again that Plaintiff's neurological exam was "unremarkable" and that he appeared alert and used normal speech. AR 465. Additionally, the chart notes of Dr. Megan Madden, Plaintiff's neurologist beginning in 2014, state that a neurological exam reveals that Plaintiff was "alert and oriented at times three with normal fund of knowledge, intact naming, comprehension and repetition were present." AR 355. These contemporaneous treatment records contradict Dr. Smith's opinion that Plaintiff's cognitive

impairment documented in 2017 also existed during the relevant time period in 2014. Substantial evidence therefore supports the ALJ's finding that Dr. Smith's testimony is inconsistent with contemporaneous medical evidence in the record.

Second, the ALJ found that Dr. Smith's opinion conflicted with Plaintiff's work history. AR 21. In his letter dated March 13, 2019, Dr. Smith stated that Plaintiff was "totally disabled" from 1993 to 2014 and "disabled due to epilepsy throughout most of his work life." AR 792-92. Plaintiff, however, worked full-time as a construction worker for over three decades during that time period. AR 37. Dr. Smith suggested that Plaintiff managed to continue working only because coworkers watched out for him and exempted him from operating equipment. AR 39, 792-93. Those accommodations do not, however, reconcile the inconsistency between Plaintiff's ability to work throughout his adult life and Dr. Smith's conclusion that he was also totally disabled during that time. Substantial evidence therefore supports the ALJ's finding that Dr. Smith's opinion on Plaintiff's disability conflicts with Plaintiff's work history.

Third, the ALJ noted that Dr. Smith's opinion that Plaintiff was cognitively impaired in 2014 and totally disabled from 1993 to 2014 lacks the support of objective medical evidence. AR 17, 21. During the hearing, Dr. Smith suggested that Plaintiff's neurological reports from before his surgery in 1993 support his conclusion. AR 68-69. Plaintiff's epilepsy and associated symptoms, however, dramatically improved after his surgery. AR 463, 750. Plaintiff's pre-surgery condition 20 years before the relevant time period does not provide reliable support for Dr. Smith's conclusions. Moreover, Plaintiff did not include that report in the record.

Plaintiff also argues that Dr. Madden's letter dated February 17, 2019, concluding that Plaintiff was "medically disabled due to seizures and cognitive impairment related to epilepsy starting in 2009" supports Dr. Smith's opinions. AR 786. The ALJ, however, found

Dr. Madden's opinion not persuasive because, like with Dr. Smith, Dr. Madden's retrospective opinions of Plaintiff's disability conflict with her own contemporaneous treatment notes. AR 22. Plaintiff does not argue that the ALJ erred in finding Dr. Madden's opinion not persuasive and there is no other objective medical evidence that supports Dr. Smith's conclusion that Plaintiff was totally disabled from 1993 to 2014 and cognitively impaired in December 2014. Substantial evidence therefore supports the ALJ's finding that Dr. Smith's opinion is not supported by objective medical evidence in the record.

It is unclear whether the Commissioner disputes that the ALJ must continue to identify "specific, legitimate" reasons for discounting a controverted medical opinion under the new regulations for evaluating medical opinion evidence. Regardless, the ALJ has identified specific, legitimate reasons for finding Dr. Smith's testimony and medical opinion not persuasive. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (affirming as a specific, legitimate reason the ALJ's identified "contradiction" between a doctor's conclusion that a claimant was fully disabled alongside the doctor's acknowledgement that the claimant worked full-time during the same time frame); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (concluding that conflicting medical records is a specific, legitimate reason for rejecting the opinion of a treating physician).

## B.  The Medical Opinions of Drs. Johnson and Davey

Plaintiff argues that the ALJ failed to fully adopt the opinions of two state medical consultants, Drs. Johnson and Davey. Plaintiff argues that because the ALJ found the opinions of Drs. Johnson and Davey opinions persuasive, the ALJ also should have adopted the notations of Drs. Johnson and Davey that Plaintiff suffered from both of the severe impairments of "Epilepsy" and "Neurocognitive Disorders," *see* AR 87, 98, rather than only finding the severe impairment of epilepsy (seizure disorder) at step two. *See* AR 16. It is unclear from the record

whether state agency consultants Drs. Johnson and Davey (medical consultants) or Drs. Irmgard

E. Friedburg and Winifred C. Ju (psychological consultants) determined those severe

impairments. *See* AR 88, 98. For the purposes of this Opinion and Order, the Court accepts the

arguments of the parties and assumes that Drs. Johnson and Davey determined the severe

impairments.

       Even if the ALJ did err by not including "Neurocognitive Disorders" as a severe

impairment at step two, the error was harmless. First, it is unclear whether Drs. Johnson and

Davey concluded that Plaintiff suffered from a neurocognitive disorder at the time of the

evaluation or as of the date last insured. Assuming Drs. Johnson and Davey did determine that

Plaintiff had a neurocognitive disorder as of the date last insured, Drs. Friedburg and Ju

nevertheless found in the same medical evaluations that there was "insufficient evidence" to

substantiate a conclusion that any neurocognitive disorder satisfied one of the impairments listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 87-88, 98. Further, Drs. Johnson and Davey

also concluded that Plaintiff had no visual or communicative limitations in his RFC assessment.

AR 89, 100. Thus, even if the ALJ had included "Neurocognitive Disorders" at step two,

Drs. Johnson and Davey's assessments still support the ALJ's conclusion that Plaintiff's

impairments did not meet any listed impairment and that Plaintiff's RFC included no

neurological limitations. Additionally, the ALJ analyzed whether Plaintiff had neurocognitive

limitations while developing Plaintiff's RFC. *See* AR 20, 22 (discussing whether Plaintiff's

medical records showed neurological symptoms). In light of the state agency consultant's

conclusions and the fact that the ALJ performed an analysis of Plaintiff's neurocognitive

limitations despite not naming "Neurocognitive Disorders" as a severe impairment, any step two

error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error

harmless where the ALJ discussed the impairment during later steps); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

## C. Listed Impairments for Epilepsy

Plaintiff next argues that the ALJ erred by concluding that Plaintiff did not meet listings 11.02(B) or 11.02(D) for epilepsy. To meet a listing at step three, the claimant "must meet *all* of the specified medical criteria." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To meet Listing 11.02(B), Plaintiff must show he had dyscognitive seizures "at least once a week for at least 3 consecutive months." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.02(B) (2021). To meet Listing 11.02(D), Plaintiff must show he had dyscognitive seizures "at least once every 2 weeks for at least 3 consecutive months" and a "marked limitation" in one of the following: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id.* § 11.02(D).

Plaintiff argues that he meets Listing 11.02(B) because Dr. Smith's opinion that Plaintiff underreported his seizures permits the reasonable inference that Plaintiff did in fact have at least one seizure per week for at least three consecutive months even though the medical records show he only had two to four seizures per month during the relevant period. As explained above, substantial evidence supports the ALJ's finding that Dr. Smith's opinion was not persuasive. Even if the ALJ did find Dr. Smith's opinion persuasive, his retrospective opinion that Plaintiff likely underreported his seizures still does not satisfy the clear criteria of 11.02(B). Assuming Plaintiff had underreported his seizures, there is no evidence in the record to establish exactly

how often he failed to report his seizures. If, for example, Plaintiff only underreported one seizure per month, then he still would have had an average of three to five seizures per month, which does not satisfy the criteria for 11.02(B). With no evidence establishing that Plaintiff experienced at least one seizure per week for at least three consecutive months, the ALJ did not err in concluding that Plaintiff did not meet Listing 11.02(B) for epilepsy.

Plaintiff also argues that he meets the requirements of 11.02(D) because Dr. Smith and Dr. Madden offered the opinions that Plaintiff suffered from cognitive decline. As explained above, the ALJ did not err in finding Dr. Smith's opinion not persuasive. As Plaintiff did not raise any argument that the ALJ erred by finding Dr. Madden's opinion not persuasive, the Court will not address it. *See Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (declining to address an argument not clearly raised in the appellant's brief). Further, no contemporaneous medical evidence in the record establishes that between December 1, 2014, and December 31, 2014, Plaintiff suffered from a marked cognitive limitation. The ALJ therefore did not err in concluding that Plaintiff did not meet Listing 11.02(D) for epilepsy.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of September, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge